# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No.  '22 MJ3805
Black Samsung Smartphone )
Seized as FP&F No. 2023565300003501 Item 0003 )
("Target Device 1") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Giancarlo Lugo, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

*Judge's signature*

Date: 10/17/2022

City and state: San Diego, California          HON. KAREN S. CRAWFORD, U.S. Magistrate Judge
*Printed name and title*



# AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

>Black Samsung Smartphone
>Seized as FP&F No. 2023565300003501 Item 0003
>**("Target Device 1")**
>
>Blue Motorola Smartphone
>Seized as FP&F No. 2023565300003502 Item 0001
>**("Target Device 2")**

(**"Target Devices"**), as further described in Attachments A-1, A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant related to the investigation and prosecution of Abel MENDOZA-Castro and Hugo Cesar ZAVALA-Lachica for transporting and moving illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all my knowledge of the investigation into this matter.  Dates and times are approximate.

1

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2008 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for fourteen years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern

District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8.   The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

     f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On October 16, 2022, Supervisory Border Patrol Agent J. Espinoza, was conducting assigned checkpoint duties on the State Route 94 (SR-94) checkpoint within the Brown Field Border Patrol Station area of responsibility. Agent Espinoza was wearing his full rough duty Border Patrol uniform with all badges and insignias visible.

12. At approximately 3:34 PM, a Jeep Grand Cherokee approached the primary checkpoint position. Agent Espinoza observed the driver, later identified as defendant Abel MENDOZA-Castro, a front seat passenger, later identified as defendant Hugo Cesar ZAVALA-Lachica, and four passengers in the rear area, including one later identified as defendant Jorge Alberto RODRIGUEZ, and three later identified as material witnesses, Reynaldo Luis GASTELUM-Angulo, Carlos Roberto GONZALEZ-Castillo, and Jose Manuel LOPEZ-Damian. Agent Espinoza conducted an immigration inspection on all occupants. MENDOZA and RODRIGUEZ stated they are United States Citizens. ZAVALA, GASTELUM, GONZALEZ, and LOPEZ, stated that they are citizens of Mexico without immigration documents which would allow them to enter or remain in the United States legally.

13. At approximately 3:36 PM, Agent Espinoza placed MENDOZA, RODRIGUEZ, ZAVALA, GASTELUM, GONZALEZ, and LOPEZ, under arrest. This location is approximately eight miles north of the United States/Mexico International Boundary and approximately eight miles east of the Otay Mesa, California Port of Entry.

14. At the time of arrest, a black Samsung Smartphone **(Target Device 1)**, was found in the center console of the vehicle. MENDOZA claimed ownership of the **Target Device 1** as his. **Target Device 1** was subsequently seized. At the time of arrest, a blue

5

Motorola Smartphone **(Target Device 2)** was found in ZAVALA's hand. ZAVALA claimed ownership of the **Target Device 2** as his. **Target Device 2** was subsequently seized.

15. Defendant Jorge Alberto RODRIGUEZ was read his Miranda rights. RODRIGUEZ stated he understood his rights and was willing to speak without a lawyer present. RODRIGUEZ admitted to successfully transporting individuals illegally present in the United States to the Los Angeles, California area numerous times in past. RODRIGUEZ stated that he lives in the same building as the other two defendants, Abel MENDOZA-Castro, and Hugo Cesar ZAVALA-Lachica, and that when they met up earlier in the day (10/16/2022), RODRIGUEZ overheard MENDOZA and ZAVALA talking about picking up individuals illegally present in the United States. RODRIGUEZ stated that MENDOZA drove, and ZAVALA gave the directions. RODRIGUEZ stated that he expected to be paid $900 USD per individual because that is what he had received in the previous events.

16. Material Witnesses Reynaldo Luis GASTELUM-Angulo, Carlos Roberto GONZALEZ-Castillo, and Jose Manuel LOPEZ-Damian stated they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. GONZALEZ, and LOPEZ stated that smuggling arrangements were made prior to entering the United States. GONZALEZ, and LOPEZ stated they were going to pay between $1,500 to $3,000 USD if successfully smuggled into the United States. GASTELUM, GONZALEZ, and LOPEZ stated that they knew that a Jeep Grand Cherokee would be picking them up and acknowledged that when the Cherokee arrived there were three individuals already inside. When the Cherokee arrived, LOPEZ stated that the defendant RODRIGUEZ opened the door and told them to get in the vehicle. LOPEZ stated the defendant MENDOZA told them to lay on the floor. LOPEZ stated that ZAVALA told them not to worry as they approached the checkpoint. When shown a photographic line up, GONZALEZ was able to identify RODRIGUEZ as a rear passenger

and ZAVALA as the front passenger of the vehicle in this event. GASTELUM was able to identify RODRIGUEZ.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that defendants Abel MENDOZA-Castro and Hugo Cesar ZAVALA-Lachica were using their **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the defendants, MENDOZA, and ZAVALA, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **September 16, 2022, through October 16, 2022**.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.

Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days from the date this warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

8

## CONCLUSION

22. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

23. Because the **Target Devices** were seized at the time of MENDOZA and ZAVALA's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **September 16, 2022, through October 16, 2022.**

24. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachments A-1, A-2 and seized the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Giancarlo Lugo
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this ___17th___ day of October 2022.

Hon. Karen S. Crawford
United States Magistrate Judge

9

# ATTACHMENT A-1

## PROPERTY TO BE SEARCHED

The following property is to be searched:

Black Samsung Smartphone
Seized as FP&F No. 2023565300003501 Item 0003
**("Target Device 1")**

Target Device 1 is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT B

### ITEM TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A-1, A-2, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **September 16, 2022, through October 16, 2022**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.